```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
```
_____

**UNITED STATES OF AMERICA,**         )
                                      )
    **Plaintiff,**                      )
                                      )
**v.**                                )
                                      )   No. 09-20500-A/P
**OTAH HUNT,**                        )
                                      )
    **Defendant.**                      )
                                      )

_____

**REPORT AND RECOMMENDATION**
_____

Before the court by order of reference is defendant Otah Hunt's Motion to Suppress the February 1, 2008 Stop, Arrest, and Search of Defendant and His Vehicle in Violation of the Fourth Amendment, filed on July 20, 2010. (D.E. 29.) The United States ("government") filed a response on August 9, 2010. The motion was held in abeyance pending disposition of Hunt's Motion for Disclosure of Identity of Confidential Informant. After that motion was denied, the court conducted a suppression hearing. At the hearing, the court heard testimony from Shelby County Sheriff Detectives Christopher Grimes, Paul Vance, and Wes Henson. The court admitted several exhibits as evidence, including (1) a photograph of the intersection where Hunt was stopped and arrested (Ex. 1); (2) photographs of the Lincoln Town Car driven by Hunt at the time of his arrest (Exs. 2-4); (3) photographs of the pistol

found in the Lincoln's driver's door armrest console (Exs. 5-6); (4) the "Operational Plan" prepared by Detective Grimes (Ex. 7); (5) a driver's license photograph of Hunt (Ex. 8); (6) the vehicle registration for the Lincoln (Ex. 9); and (7) an aerial map of the location where Hunt was stopped and arrested (Ex. 10).

Based on the briefs filed in support of and in opposition to the motion, the evidence presented at the hearing, and the entire record, the court submits the following proposed findings of fact and conclusions of law, and recommends that the Motion to Suppress be denied.

## I.  PROPOSED FINDINGS OF FACT

The court has carefully considered the testimony of the government's witnesses, including their demeanor as they testified at the hearing.  The court finds these witnesses to be credible, and therefore the court adopts the detectives' version of events as its Proposed Findings of Fact.[1]

On February 1, 2008, Detective Christopher Grimes received information from a reliable confidential informant ("CI") that an individual personally known to the CI as "Wesley" (later identified as defendant Otah Hunt) was selling heroin from his vehicle in the area of Airways Boulevard and Dunn Avenue in Memphis, Tennessee.[2]

---

[1] Hunt did not call any witnesses.

[2] Detective Grimes testified that he had worked with this CI for approximately four years and had made more than five narcotics arrests (including arrests for possession of heroin, crack cocaine,

Detective Grimes was aware that this was a high-crime area with a high amount of drug activity. Detective Grimes and Detective Paul Vance met with the CI later that same day at the CI's residence. The CI described Wesley as being a black male, approximately 5'9" in height, weighing at least 210 pounds, and approximately sixty years old. Further, the CI informed them that Wesley drove a gray-colored Lincoln Town Car with Tennessee license plate number 799-LPY. The detectives were informed that the CI could make an undercover drug buy from Wesley. After searching the CI and confirming that the CI did not have any contraband or money, Detective Grimes gave the CI $225.00 in government funds to use in the drug transaction. While standing next to Detectives Grimes and Vance, the CI called Wesley and arranged a time and place to buy heroin from him.[3]

Detective Grimes, using binoculars, conducted surveillance of the transaction from the driveway of a residence located approximately two houses over and thirty feet from the CI's residence (the agreed upon location of the drug transaction). At

---

and marijuana) based on information obtained from this CI, which later led to convictions. Detective Grimes testified that the CI was paid for arranging the drug transaction with Wesley, but he could not remember the exact amount of the payment. He also testified that the CI had a criminal record, but he could not recall the CI's specific criminal convictions.

[3]The phone call was not recorded and Detectives Grimes and Vance did not hear Wesley's voice on the other end of the call. However, the detectives heard the CI say that the CI had $225.00 and wanted to buy some heroin.

the same time, Detective Vance conducted surveillance from a location down the street. About ten minutes later, the detectives observed a black male matching Wesley's physical description arrive at the CI's residence in a gray Lincoln Town Car.[4] The detectives observed Wesley get out of his vehicle and approach the CI in the walkway in front of the residence. The detectives then observed what appeared to be a hand-to-hand drug transaction between Wesley and the CI. Although the detectives testified that they did not actually see drugs or money being exchanged because Wesley had his back to them, the detectives observed hand movements that were consistent with a drug transaction.

Wesley then returned to his vehicle and drove away from the scene. Immediately after he left, the detectives met with the CI, at which time the CI showed them a plastic baggie containing the drugs purchased from Wesley. Detective Grimes conducted a field test and the substance tested positive for heroin. The CI stated that Wesley had more heroin with him.[5] Detective Grimes then directed Detective Wes Henson and other detectives who were assisting with the investigation and positioned nearby to conduct

---

[4]Detective Grimes was unable to see the license plate number from his surveillance position. However, Detective Vance testified that the license plate number matched the number provided by the CI.

[5]Although Detective Grimes did not testify to this statement at the suppression hearing, he testified that the CI made this statement at the prior hearing held on January 20, 2011, relating to Hunt's motion to reveal the identity of the CI.

a stop of Wesley's vehicle.  Detective Grimes told Detective Henson that Wesley had just sold heroin to the CI and gave him a physical description of Wesley as well as a description of the Lincoln and its license plate number.  Shortly thereafter, Detective Henson observed a black male matching Wesley's description driving a gray Lincoln Town Car with Tennessee license plate 799-LPY in the area of Airways Boulevard and Dunn Avenue.  Detective Henson pulled behind the Lincoln and initiated his blue lights and siren.  Wesley did not stop, however, and instead attempted to evade the detective by weaving through traffic, nearly hitting other vehicles.  Detective John Page, who was driving another vehicle, pulled in front of the Lincoln and slowed down in an attempt to stop the vehicle.  After driving about half a mile, the detectives were able to stop the Lincoln near the intersection of Dunn Avenue and Castalia Street.

   Detectives Grimes, Henson, Vance, Page, and a "Detective Williams," approached the Lincoln and gave Wesley verbal commands to exit the vehicle.  Wesley refused to get out and instead held onto the driver's door.  He also made several movements inside the vehicle toward the center console and driver's door, which the detectives believed to be consistent with attempts to retrieve or hide something.  Detective Williams used his baton to break the front passenger's window of the Lincoln to distract Wesley.  With Wesley distracted, Detective Henson was able to open the driver's

door and remove him from the vehicle.  As Wesley was pulled out of the vehicle, he threw a clear plastic baggie to the ground.  Detective Grimes retrieved the baggie, and while Wesley was being secured by other detectives, Detective Grimes field tested the substance, which tested positive for heroin.  Wesley was then handcuffed and placed under arrest.

The detectives later identified Wesley as Otah Hunt.  Detective Grimes advised Hunt of his <u>Miranda</u> rights, and Hunt responded that he understood his rights.  Detective Grimes then asked Hunt if there was anything else in the Lincoln, and Hunt stated, "No, you can search it."  Detective Grimes retrieved his certified narcotics-detection canine, Lucy, from his vehicle, and Lucy gave a positive alert for the odor of narcotics near the driver's door of the Lincoln.  Subsequently, the detectives searched the driver's door area and found a loaded pistol in the driver's door armrest console.  The detectives also recovered from Hunt the $225.00 in buy money that the CI used to purchase heroin from Hunt.  The Lincoln was towed and inventoried by the detectives.

The government subsequently charged Hunt with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), possessing heroin with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), and using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. §

924(c).  In his Motion to Suppress, Hunt contends that the detectives violated his Fourth Amendment rights by stopping his vehicle without reasonable suspicion or probable cause.

## II.  PROPOSED CONCLUSIONS OF LAW

The Sixth Circuit has held that under Terry v. Ohio, 392 U.S. 1 (1968), an investigative stop is permissible under the Fourth Amendment "'if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur.'" United States v. Davis, 514 F.3d 596, 607-08 (6th Cir. 2008) (quoting United States v. Davis, 430 F.3d 345, 354 (6th Cir. 2005)); see also United States v. Flores, 571 F.3d 541, 544 (6th Cir. 2009) (citing Terry, 392 U.S. at 22; United States v. Williams, 962 F.2d 1218, 1223-24 (6th Cir. 1992)).  "Courts must determine from the totality of the circumstances whether law enforcement had an objective and particularized basis for suspecting criminal wrongdoing." United States v. Perez, 440 F.3d 363, 371 (6th Cir. 2004) (citing United States v. Arvizu, 534 U.S. 266, 273-77 (2002); United States v. Orsolini, 300 F.3d 724, 728-29 (6th Cir. 2002)).

In the present case, the detectives (1) received information from a reliable informant that Wesley was selling heroin from his vehicle in an area known to the detectives to be a high-drug area; (2) were provided with a detailed description of Wesley as well as a description of his vehicle and license plate number; (3) heard

the CI arrange the drug transaction over the phone; (4) observed the CI complete the transaction with Hunt; (5) verified through a field test that the substance Hunt had sold to the CI was heroin; and (5) were informed that Hunt had more heroin with him.[6]  Under the totality of the circumstances, the detectives had more than sufficient reasonable suspicion to justify the vehicle stop.  See United States v. Johnson, 627 F.3d 578, 584 (6th Cir. 2010) (holding that officers had reasonable suspicion to stop defendant based on observing hand-to-hand transaction with a man in a high-crime area known for drug activity); United States v. Paulette, 457 F.3d 601, 606 (6th Cir. 2006) (holding that "[v]iewing the totality of the circumstances, the officers had a reasonable suspicion that Paulette was engaged in criminal activity based upon his hand movements consistent with drug-dealing activity, efforts to evade the police upon noticing them, and presence in a high crime area").

Moreover, the degree of intrusion during the stop was reasonable under the circumstances.  Hunt refused to stop and started weaving through traffic when Detective Henson activated his blue lights and siren, and Hunt refused to comply with the detectives' verbal commands to get out of his vehicle and he instead held onto the driver's door and appeared to be hiding or

---

[6]The court submits that even if the CI had not told the detectives that Hunt had more heroin with him, the detectives still had reasonable suspicion to stop the Lincoln based on the other information known to the detectives through their investigation.

-8-

retrieving something in the vehicle.  The detectives acted reasonably in breaking the passenger's door window in order to distract Hunt and removing him from the vehicle.

Once Hunt was removed from the vehicle and threw the clear plastic baggie to the ground, the detectives observed the suspected drugs in plain view and were justified in seizing the baggie.  Upon field testing the substance, they confirmed that it was in fact heroin, and thus had probable cause to arrest Hunt for possession of heroin.

Finally, the detectives' post-arrest search of the Lincoln did not violate Hunt's Fourth Amendment rights.  First, it was reasonable for the detectives to believe that evidence relevant to the crime of arrest might be found in the vehicle. United States v. Buford, 632 F.3d 264, 269 (6th Cir. 2011) (discussing Arizona v. Gant, 129 S. Ct. 1710 (2009)).  The detectives, having witnessed Hunt sell heroin to the CI, attempt to hide or retrieve something in his vehicle, and throw a baggie of heroin to the ground, reasonably believed that Hunt would have more drugs in his vehicle.[7]  Thus, the detectives could search the compartments in the vehicle where drugs could have been hidden, which included the driver's door armrest console where they found the pistol. See United States v. Bell, 343 F. App'x 72, 74 (6th Cir. 2009) (citing

---

[7]As discussed later, Detective Grimes's narcotics-detection canine also alerted to the odor of narcotics in the area of the driver's door.

Gant and concluding that police reasonably believed that evidence of defendant's drug offense was in the car based on defendant's drug transaction taking place in the car and that defendant had driven the car to and from the sale); United States v. Conerly, No. 10-20380, 2010 WL 4723440, at *3 (E.D. Mich. Nov. 15, 2010) (citing Gant and concluding that police reasonably believed that additional evidence of marijuana possession could be found inside defendant's vehicle where defendant handed officer a marijuana cigarette after the officer pulled over defendant's vehicle).

Second, even if the court were to conclude that the detectives lacked a reasonable belief to search the vehicle under Gant (which it does not conclude), it is clear that at the time of the search (February 1, 2008), the detectives' actions were in compliance with the well-settled law of the Sixth Circuit: that under the pre-Gant decision of New York v. Belton, 453 U.S. 454 (1981), once a police officer has effected a valid arrest, that officer can search the area that is or was within the arrestee's control.  Buford, 632 F.3d at 268-69.  Based on the detectives' objective, good faith reliance on settled circuit precedent that authorized the search of Hunt's vehicle, the exclusionary rule would not apply in this case.

Third, after Hunt was advised of his Miranda rights and acknowledged that he understood his rights, he told the detectives that there was nothing in the vehicle and gave them voluntary consent to search his vehicle.  "If an officer obtains consent to

-10-

search, a warrantless search does not offend the Constitution." United States v. Moon, 513 F.3d 527, 537 (6th Cir. 2008) (citing Davis v. United States, 328 U.S. 582, 593-94 (1946)). "An officer with consent needs neither a warrant nor probable cause to conduct a constitutional search." United States v. Jenkins, 92 F.3d 430, 436 (6th Cir. 1996) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). "[A] search is not unreasonable if an individual with a privacy interest in the item to be searched gives voluntary consent." United States v. McCauley, 548 F.3d 440, 446 (6th Cir. 2008) (citing Bustamonte, 412 U.S. at 219).

Finally, the detectives were also permitted to search the Lincoln under the "automobile exception" to the Fourth Amendment, which allows law enforcement to search a vehicle without a warrant when they have probable cause to believe the vehicle contains evidence of criminal activity. United States v. Allen, No. 1:10CR-10-R, 2011 WL 635876, at *7 (W.D. Ky. Feb. 11, 2011) (citing Carroll v. United States, 267 U.S. 132, 147 (1925); United States v. Smith, 510 F.3d 641, 647 (6th Cir. 2007); United States v. Lumpkin, 159 F.3d 983, 986 (6th Cir. 1998)). In addition to the events leading up to Hunt's arrest, Detective Grimes's certified narcotics-detection canine alerted to the odor of narcotics in the area of the driver's door.[8] Thus, the detectives had probable

---

[8]In Illinois v. Caballes, 543 U.S. 405 (2005), the Supreme Court held that the use of a narcotics-detection canine during a lawful traffic stop generally does not implicate legitimate privacy

cause to believe the vehicle contained drugs and therefore could lawfully search the vehicle without a warrant.[9]

### III.  CONCLUSION

For the reasons above, it is recommended that the Motion to Suppress be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

April 8, 2011
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT.  28 U.S.C. § 636(b)(1)(C).  FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

concerns under the Fourth Amendment.  Id. at 409-10.

[9]Given the lengthy list of reasons why the vehicle search did not violate the Fourth Amendment, the court does not reach the issue of whether the search was justified on other grounds, such as whether the pistol would have been "inevitably discovered" as a result of the vehicle inventory search.