**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

UNITED STATES OF AMERICA,    )
                        )
        Plaintiff,    )
                        )
v.                      )        **No. 09-20500-STA-tmp**
                        )
OTAH HUNT,           )
                        )
        Defendant.    )

---

**ORDER ADOPTING THE REPORT AND RECOMMENDATION TO DENY
DEFENDANT'S MOTION TO SUPPRESS**

---

Before the Court is the United States Magistrate Judge's Report and Recommendation on Defendant Otah Hunt's Motion to Suppress (D.E. # 58).  Defendant has filed timely objections to the Report and Recommendations, to which the government has responded.  For the reasons set forth below, the Magistrate Judge's Report and Recommendations are **ADOPTED** and Defendant's Motion to Suppress is **DENIED**.

## <u>BACKGROUND</u>

The parties have not objected to the Magistrate Judge's proposed findings of facts in this matter.[1]  The Magistrate Judge conducted a hearing and received the testimony of Shelby County Sheriff Detectives Christopher Grimes, Paul Vance, and Wes Henson.  Defendant did not call any witnesses.  The government also entered the following exhibits: (1) a photograph of the

---

[1] Defendant's objections about the confidential informant's hearsay statements are addressed below.

intersection where Hunt was stopped and arrested (ex. 1); (2) photographs of the Lincoln Town Car driven by Hunt at the time of his arrest (exs. 2-4); (3) photographs of the pistol found in the Lincoln's driver's door armrest console (exs. 5-6); (4) the "Operational Plan" prepared by Detective Grimes (ex. 7); (5) a driver's license photograph of Hunt (ex. 8); (6) the vehicle registration for the Lincoln (ex. 9); and (7) an aerial map of the location where Hunt was stopped and arrested (ex. 10).  Based on his observations of the witnesses, the Magistrate Judge found the witnesses to be credible and relied on the detectives' version of events as his Proposed Findings of Fact.  The Court adopts the Magistrate Judge's proposed findings of fact as follows:

On February 1, 2008, Detective Christopher Grimes received information from a reliable confidential informant ("CI") that an individual personally known to the CI as "Wesley" (later identified as Defendant Otah Hunt) was selling heroin from his vehicle in the area of Airways Boulevard and Dunn Avenue in Memphis, Tennessee.[2]  Detective Grimes was aware that this was a high-crime area with a high amount of drug activity.  Detective Grimes and Detective Paul Vance met with the CI later that same day at the CI's residence.  The CI described Wesley as being a black male, approximately 5'9" in height, weighing at least 210 pounds, and approximately sixty years old.  Further, the CI informed them that Wesley drove a gray-colored Lincoln Town Car with Tennessee license plate number 799-LPY.  The detectives were informed that the CI could make an undercover drug buy from Wesley.

---

[2] Detective Grimes testified that he had worked with this CI for approximately four years and had made more than five narcotics arrests (including arrests for possession of heroin, crack cocaine, and marijuana) based on information obtained from this CI, which later led to convictions. Detective Grimes testified that the CI was paid for arranging the drug transaction with Wesley, but he could not remember the exact amount of the payment. He also testified that the CI had a criminal record, but he could not recall the CI's specific criminal convictions.

After searching the CI and confirming that the CI did not have any contraband or money, Detective Grimes gave the CI $225.00 in government funds to use in the drug transaction. While standing next to Detectives Grimes and Vance, the CI called Wesley and arranged a time and place to buy heroin from him.[3]

Detective Grimes, using binoculars, conducted surveillance of the transaction from the driveway of a residence located approximately two houses over and thirty feet from the CI's residence (the agreed upon location of the drug transaction).  At the same time, Detective Vance conducted surveillance from a location down the street.  About ten minutes later, the detectives observed a black male matching Wesley's physical description arrive at the CI's residence in a gray Lincoln Town Car.[4]  The detectives observed Wesley get out of his vehicle and approach the CI in the walkway in front of the residence. The detectives then observed what appeared to be a hand-to-hand drug transaction between Wesley and the CI.  Although the detectives testified that  they did not actually see drugs or money being exchanged because Wesley had his back to them, the detectives observed hand movements that were consistent with a drug transaction.

Wesley then returned to his vehicle and drove away from the scene.  Immediately after he left, the detectives met with the CI, at which time the CI showed them a plastic bag containing the drugs purchased from Wesley.  Detective Grimes conducted a field test, and the substance

---

[3] The phone call was not recorded and Detectives Grimes and Vance did not hear Wesley's voice on the other end of the call.  However, the detectives heard the CI say that the CI had $225.00 and wanted to buy some heroin.

[4] Detective Grimes was unable to see the license plate number from his surveillance position.  However, Detective Vance testified that the license plate number matched the number provided by the CI.

tested positive for heroin.  The CI stated that Wesley had more heroin with him.[5]  Detective Grimes then directed Detective Wes Henson and other detectives who were assisting with the investigation and positioned nearby to conduct a stop of Wesley's vehicle.  Detective Grimes told Detective Henson that Wesley had just sold heroin to the CI and gave him a physical description of Wesley as well as a description of the Lincoln and its license plate number. Shortly thereafter, Detective Henson observed a black male matching Wesley's description driving a gray Lincoln Town Car with Tennessee license plate 799-LPY in the area of Airways Boulevard and Dunn Avenue.  Detective Henson pulled behind the Lincoln and initiated his blue lights and siren. Wesley did not stop, however, and instead attempted to evade the detective by weaving through traffic, nearly hitting other vehicles.  Detective John Page, who was driving another vehicle, pulled in front of the Lincoln and slowed down in an attempt to stop the vehicle. After driving about half a mile, the detectives were able to stop the Lincoln near the intersection of Dunn Avenue and Castalia Street.

Detectives Grimes, Henson, Vance, Page, and a "Detective Williams," approached the Lincoln and gave Wesley verbal commands to exit the vehicle.  Wesley refused to get out and instead held onto the driver's door.  He also made several movements inside the vehicle toward the center console and driver's door, which the detectives believed to be consistent with attempts to retrieve or hide something.  Detective Williams used his baton to break the front passenger's window of the Lincoln to distract Wesley.  With Wesley distracted, Detective Henson was able to open the driver's door and remove him from the vehicle.  As Wesley was pulled out of the

---

[5] Although Detective Grimes did not testify to this statement at the suppression hearing, he testified that the CI made this statement at the prior hearing held on January 20, 2011, relating to Hunt's motion to reveal the identity of the CI.

vehicle, he threw a clear plastic bag to the ground.  Detective Grimes retrieved the bag, and while Wesley was being secured by other detectives, Detective Grimes field tested the substance, which tested positive for heroin.  Wesley was then handcuffed and placed under arrest.

The detectives later identified Wesley as Otah Hunt.  Detective Grimes advised Hunt of his Miranda rights, and Hunt responded that he understood his rights.  Detective Grimes then asked Hunt if there was anything else in the Lincoln, and Hunt stated, "No, you can search it." Detective Grimes retrieved his certified narcotics-detection canine, Lucy, from his vehicle, and Lucy gave a positive alert for the odor of narcotics near the driver's door of the Lincoln. Subsequently, the detectives searched the driver's door area and found a loaded pistol in the driver's door armrest console.  The detectives also recovered from Hunt the $225.00 in buy money that the CI used to purchase heroin from Hunt.  The Lincoln was towed and inventoried by the detectives.

The government subsequently charged Hunt with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), possessing heroin with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), and using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c).

In his Report and Recommendation, the Magistrate Judge concluded that Defendant's Motion to Suppress should be denied.  The Magistrate Judge held that the police had reasonable suspicion to effect a *Terry* stop of Defendant's vehicle based on the fact that they: (1) had received information from a reliable informant that Wesley was selling heroin from his vehicle in an area known to the detectives to be a high-drug area; (2) were provided with a detailed description of Wesley as well as a description of his vehicle and license plate number; (3) heard

the CI arrange the drug transaction over the phone; (4) observed the CI complete the transaction with Hunt; (5) verified through a field test that the substance Hunt had sold to the CI was heroin; and (6) were informed that Hunt had more heroin with him.  The Magistrate Judge further concluded that the degree of intrusion was reasonable under the circumstances.  Defendant had refused to stop his vehicle when officers first attempted to pull him over and began weaving recklessly through traffic.  After stopping his vehicle, Defendant did not comply with the officers' commands to exit his vehicle, all the while holding his door and giving the appearance of hiding something inside.  As officers finally pulled Defendant from the vehicle, Defendant dropped a plastic bag that officers confirmed held heroin.  The Magistrate Judge concluded that at that point police had probable cause to arrest Defendant.

The Magistrate Judge went on to discuss the justification for the police's post-arrest search of Defendant's vehicle and stated that the search did not violate Defendant's Fourth Amendment rights.  The police had reason to believe that the vehicle contained evidence of the offense of arrest.  In the alternative, officers were acting in good faith reliance on then-existing circuit precedent that permitted a search incident to an arrest of the arrestee's vehicle.  After receiving his Miranda warnings, Defendant even consented to the search of his vehicle.  The automobile exception to the warrant requirements also justified the search.  Therefore, the Magistrate Judge recommended that the Court deny Defendant's Motion to Suppress.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636, the Court may refer a motion to suppress in a criminal matter to a United States Magistrate Judge for the purpose of conducting an evidentiary hearing

and to submit proposed findings of fact and recommendations for the disposition of the motion.[6]

The Court must "make a de novo determination of those portions of the report or specific

proposed findings or recommendations to which objection is made."[7]  After reviewing the

evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations

of the magistrate judge.[8]  The Court need not review, under a de novo or any other standard,

those aspects of the report and recommendation to which no specific objection is made.[9]  Rather

the Court may adopt the findings and rulings of the magistrate judge to which no specific

objection is filed.[10]

Defendant has made two objections to the Magistrate Judge's Report and

Recommendation.  First, Defendant argues that the Magistrate Judge erroneously held that the

degree of intrusion during the *Terry* stop was reasonable under the circumstances.  Defendant

asserts that the officers' display of force amounted to an arrest without probable cause.[11]  After

Defendant stopped his vehicle, his egress was blocked by two police cars.  Detective Henson

approached Defendant's door and attempted to open it.  Williams broke one of the vehicle's

windows with a baton, and Henson eventually pulled Defendant out of the car by force.

Defendant contends that the officers' conduct was not reasonable and transformed the detention

---

[6] 28 U.S.C. § 636(b)(1)(B).

[7] § 636(b)(1)(C).

[8] *Id.*

[9] *Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

[10] *Id.* at 151.

[11] Defendant does not suggest that the officers' lacked reasonable suspicion to make the stop, only that their actions were consistent with an arrest.

7

into an arrest.  On the basis of the supposed illegal arrest, Defendant argues that the evidence against him should be suppressed.

Second, Defendant objects that the Magistrate Judge relied on hearsay in proposing his findings of fact.  According to Defendant, officers testified at the suppression hearing about hearsay statements made by the CI.  Defendant argues that he was denied an opportunity to discover the identity of the CI and challenge the CI's competence and credibility.  Therefore, Defendant argues that any such hearsay statements should not be adopted as part of the Court's findings of fact.

## ANALYSIS

### I.      The Investigative Detention

The Court holds that the officers acted reasonably under the circumstances.  As an initial matter, Defendant does not argue that the police lacked reasonable suspicion to stop and detain him.  Nor does Defendant contest the Magistrate Judge's conclusion that police had probable cause for his arrest once Defendant was pulled from the car and threw away a plastic bag containing heroin.[12]  Defendant simply argues that based on the show of force, the seizure here was an arrest, not an investigative detention.

The government must show the detention and investigative methods police used were reasonable

---

[12] Defendant does argue, "Further, any probable cause to arrest as it relates to your Defendant throwing heroin at the feet of the officers as he was ripped from his vehicle is directly attributable to the actions of the officers when they effectuated the arrest of him."  Def.'s Objs.to the R&R, 5.  The Court finds that this amounts to a concession that the police had probable cause at this point in their encounter with Defendant.  For purposes of this Motion, Defendant's objection goes to whether the police acted reasonably in "ripping him from his vehicle."

under the circumstances.[13]  The Supreme Court has held that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."[14]  Furthermore, "the degree of force utilized by officers during a detention must be reasonably related in scope to the situation at hand."[15]  Defendant objects that the police acted unreasonably by blocking his vehicle's path, attempting to open his car door, and resorting to breaking out a window in his vehicle.  However, Defendant omits the fact that all of this occurred after he had refused to stop when Detective Henson attempted to pull him over and continued to drive recklessly to evade the pursuing police.  Even after Defendant was finally forced to stop his vehicle, he refused to comply with the officers' orders to step out of the car.  What is more, police observed Defendant reaching into the console of the car in an effort to conceal or retrieve something.  Under these circumstances, the officers reasonably blocked Defendant's escape and used force to get him out of his vehicle.

Defendant emphasizes in his brief that the police had no reason to suspect that he was armed and dangerous.  On this point, Defendant ignores the fact that the detectives had already received information from the CI about Defendant's drug-dealing activities and conducted a controlled purchase of heroin from Defendant.  A field test confirmed that the substance Defendant sold the CI was in fact heroin.  The CI reported that Defendant had an additional supply of the heroin as well.  The Sixth Circuit has repeatedly approved the display of weapons

[13] *United States v. Sharpe,* 470 U.S. 675, 683 & 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *United States v. Jacob,* 377 F.3d 573, 578 (6th Cir. 2004).

[14] *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  *See also Dorsey v. Barber*, 517 F.3d 389, 399 (6th Cir. 2008).

[15] *United States v. Heath,* 259 F.3d 522, 530 (6th Cir. 2001) (citations and quotations omitted).

and use of force in drug trafficking investigations, reasoning that "weapons are frequently used in drug transactions" and finding these measures necessary for officer safety.[16]  Furthermore, when police have a reasonable fear that suspects are armed and dangerous, they may draw weapons, use handcuffs, and take other steps to ensure their own safety "so long as circumstances warrant that precaution."[17]  This rule is consistent with *Terry* where the Supreme Court remarked that police officers should not be "required to take unnecessary risks in the performance of their duties."[18]  Under the circumstances, the officers were not just conducting a routine traffic stop.  Rather they were pursuing a suspected drug dealer who went into flight as soon as Detective Henson activated his blue lights.  The Court finds that the police acted swiftly to secure Defendant and gain his compliance while reasonably protecting themselves in the course of their investigation.  The Court concludes that the officers' conduct was reasonable as part of the investigative detention of a drug trafficking suspect who had fled and refused to obey their lawful commands.  Therefore, the Court finds no error in the Magistrate Judge's recommendation on this issue.

## II.    The Statements of the CI

---

[16] *E.g. United States v. Garcia*, 496 F.3d 495, 505 (6th Cir. 2007); *Jacob,* 377 F.3d at 578; *Heath*, 259 F.3d at 529-30.  *See also United States v. Young*, No. 07-5333, 277 F. App'x 587, 589-90; *United States v. Jackson*, No. 05-3239, 179 F. App'x. 921, 930, 2006 WL 1208077, at *8 (6th Cir. May 4, 2006)); *United States v. Richardson*, No. 00-6168, 40 F. App'x 7, 13, 2002 WL 261824, at *4 (6th Cir. Feb. 21, 2002).

[17] *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 309 (6th Cir. 2005) (quoting *Houston v. Clark Cnty. Sheriff Deputy John Does 1-5*, 174 F.3d 809, 814-15 (6th Cir. 1999)).

[18] *Terry v. Ohio,* 392 U.S. 1, 23, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Defendant's second objection to the Magistrate Judge's Report and Recommendation is the Magistrate Judge's admission of hearsay testimony during the suppression hearing. Defendant believes that the Magistrate Judge erred in receiving the testimony of the investigating officers where they repeated statements made by the CI.  Defendant contends that the admission of the hearsay effectively denied him the opportunity to cross-examine the officers about the tip they received.  Otherwise, Defendant does not specify how the matters asserted in the CI's statements would alter the Magistrate Judge's proposed ruling on the Motion to Suppress.

Federal Rule of Evidence 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[19]  In this case, Defendant appears to object to the CI's statements to the officers about Defendant's alleged drug-dealing activities, statements which led to the police investigation and Defendant's arrest.  The Court finds that Defendant's objection has no merit. Upon review of the record, it is clear that the Magistrate Judge admitted the officers' testimony about the CI's statements not to establish the truth of the matters asserted in the statements, but rather to establish why the officers undertook further investigation of Defendant.  When counsel for Defendant timely objected at the hearing to the CI's statements as hearsay,[20] the Magistrate Judge accepted the government's argument that the CI's statements were "not offered for the truth of the matter asserted; it is merely setting the stage" by "explaining subsequent

---

[19] Fed. R. Evid. 801(c).

[20] Suppression Hr'g Tr. 8:13-16.

misconduct" and "explaining why [Detective] Grimes is where he is going to be."[21]  At a later stage of the hearing, the Magistrate Judge explained further that "clearly in my mind hearsay and statements made by the informant is not being offered for the truth of the matter asserted" but instead they "showed why Detective Grimes did what he did, why he told the officers to do what they did, and it goes to the reasonable suspicion and probable cause analysis. . . ."[22]  The Sixth Circuit has held that hearsay statements that go to explain a party's state of mind and why it took a particular action are admissible.[23]  The Magistrate Judge's ruling that the CI's statements were not admitted to establish the truth of the matters asserted was, therefore, not erroneous.  As a result, the Court overrules Defendant's objection on this issue.

---

[21] *Id*. at 8:17-23.

[22] *Id*. at 17:17-24.

[23] *United States v. Williams*, 952 F.2d 1504, 1518 (6th Cir. 1991) ("It is clear from the record that the testimony. . . was admitted to establish the victims' state of mind and was not hearsay as defined by Fed.R.Evid. 801(c) because it was not offered to prove the truth of the matter asserted.").  *See also Haughton v. Orchid Automation*, 206 F. App'x 524, 532 (6th Cir. 2006) ("Defendant offered the statements not to prove their truth, however, but to demonstrate the state of mind and motive of Defendant's managers in discharging Plaintiff."); *King v. Tecumseh Pub. Schs.*, 229 F.3d 1152, 2000 WL 1256899, at *5 (Table) (6th Cir. Jul 13, 2000) ("Because the letters were offered to explain Tecumseh's reasonable belief that King was having problems and the reasons Tecumseh took action against King-in other words, state of mind, instead of truth-the letters are admissible."); *United States v. Lacey*, 53 F.3d 332, 1995 WL 258142, at *7 (Table) (6th Cir. May 2, 1995) ("We conclude that Thomas' statements did not amount to hearsay; the testimony was not admitted to establish the truth of the matter asserted but was intended to dispel the idea that Thomas had no incentive to tell the truth and stood only to gain by implicating defendant in the alleged conspiracy.").

## <u>CONCLUSION</u>

Having reviewed the Report and Recommendations, the parties' briefs, and the entire record of the proceedings de novo, the Court finds that Defendant's objections are without merit. Therefore, the Magistrate Judge's Report and Recommendation is **ADOPTED** and Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:   May 25, 2011.