IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09-20500-STA-tmp |
| ) | |
| OTAH HUNT, ) | |
| ) | |
| Defendant. ) | |

---

**ORDER OVERRULING DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER**

---

Before the Court is the United States Magistrate Judge's Order Denying Defendant's Motion for Disclosure of Identity of Confidential Informant (D.E. # 51) entered on February 28, 2011. Defendant has filed timely objections to the Magistrate Judge's Order. For the reasons set forth below, Defendant's Objections to the Magistrate Judge's Order are **OVERRULED**.

## BACKGROUND

In a previous order, the Court has set forth the relevant facts of this case as follows: On February 1, 2008, Detective Christopher Grimes received information from a reliable confidential informant ("CI") that an individual personally known to the CI as "Wesley" (later identified as Defendant Otah Hunt) was selling heroin from his vehicle in the area of Airways Boulevard and Dunn Avenue in Memphis, Tennessee.[1]  Detective Grimes was aware that this

---

[1] Detective Grimes testified that he had worked with this CI for approximately four years and had made more than five narcotics arrests (including arrests for possession of heroin, crack cocaine, and marijuana) based on information obtained from this CI, which later led to

1

was a high-crime area with a high amount of drug activity.  Detective Grimes and Detective Paul Vance met with the CI later that same day at the CI's residence.  The CI described Wesley as being a black male, approximately 5'9" in height, weighing at least 210 pounds, and approximately sixty years old.  Further, the CI informed them that Wesley drove a gray-colored Lincoln Town Car with Tennessee license plate number 799-LPY.  The detectives were informed that the CI could make an undercover drug buy from Wesley.

After searching the CI and confirming that the CI did not have any contraband or money, Detective Grimes gave the CI $225.00 in government funds to use in the drug transaction. While standing next to Detectives Grimes and Vance, the CI called Wesley and arranged a time and place to buy heroin from him.[2]

Detective Grimes, using binoculars, conducted surveillance of the transaction from the driveway of a residence located approximately two houses over and thirty feet from the CI's residence (the agreed upon location of the drug transaction).  At the same time, Detective Vance conducted surveillance from a location down the street.  About ten minutes later, the detectives observed a black male matching Wesley's physical description arrive at the CI's residence in a gray Lincoln Town Car.[3]  The detectives observed Wesley get out of his vehicle and approach

---

convictions. Detective Grimes testified that the CI was paid for arranging the drug transaction with Wesley, but he could not remember the exact amount of the payment. He also testified that the CI had a criminal record, but he could not recall the CI's specific criminal convictions.

[2] The phone call was not recorded and Detectives Grimes and Vance did not hear Wesley's voice on the other end of the call.  However, the detectives heard the CI say that the CI had  $225.00 and wanted to buy some heroin.

[3] Detective Grimes was unable to see the license plate number from his surveillance position.  However, Detective Vance testified that the license plate number matched the number provided by the CI.

the CI in the walkway in front of the residence. The detectives then observed what appeared to be a hand-to-hand drug transaction between Wesley and the CI. Although the detectives testified that they did not actually see drugs or money being exchanged because Wesley had his back to them, the detectives observed hand movements that were consistent with a drug transaction.

Wesley then returned to his vehicle and drove away from the scene. Immediately after he left, the detectives met with the CI, at which time the CI showed them a plastic bag containing the drugs purchased from Wesley. Detective Grimes conducted a field test, and the substance tested positive for heroin. The CI stated that Wesley had more heroin with him.[4] Detective Grimes then directed Detective Wes Henson and other detectives who were assisting with the investigation and positioned nearby to conduct a stop of Wesley's vehicle. Detective Grimes told Detective Henson that Wesley had just sold heroin to the CI and gave him a physical description of Wesley as well as a description of the Lincoln and its license plate number. Shortly thereafter, Detective Henson observed a black male matching Wesley's description driving a gray Lincoln Town Car with Tennessee license plate 799-LPY in the area of Airways Boulevard and Dunn Avenue. Detective Henson pulled behind the Lincoln and initiated his blue lights and siren. Wesley did not stop, however, and instead attempted to evade the detective by weaving through traffic, nearly hitting other vehicles. Detective John Page, who was driving another vehicle, pulled in front of the Lincoln and slowed down in an attempt to stop the vehicle. After driving about half a mile, the detectives were able to stop the Lincoln near the intersection of Dunn Avenue and Castalia Street.

---

[4] Although Detective Grimes did not testify to this statement at the suppression hearing, he testified that the CI made this statement at the prior hearing held on January 20, 2011, relating to Hunt's motion to reveal the identity of the CI.

Detectives Grimes, Henson, Vance, Page, and a "Detective Williams," approached the Lincoln and gave Wesley verbal commands to exit the vehicle. Wesley refused to get out and instead held onto the driver's door. He also made several movements inside the vehicle toward the center console and driver's door, which the detectives believed to be consistent with attempts to retrieve or hide something. Detective Williams used his baton to break the front passenger's window of the Lincoln to distract Wesley. With Wesley distracted, Detective Henson was able to open the driver's door and remove him from the vehicle. As Wesley was pulled out of the vehicle, he threw a clear plastic bag to the ground. Detective Grimes retrieved the bag, and while Wesley was being secured by other detectives, Detective Grimes field tested the substance, which tested positive for heroin. Wesley was then handcuffed and placed under arrest.

The detectives later identified Wesley as Otah Hunt. Detective Grimes advised Hunt of his Miranda rights, and Hunt responded that he understood his rights. Detective Grimes then asked Hunt if there was anything else in the Lincoln, and Hunt stated, "No, you can search it." Detective Grimes retrieved his certified narcotics-detection canine, Lucy, from his vehicle, and Lucy gave a positive alert for the odor of narcotics near the driver's door of the Lincoln. Subsequently, the detectives searched the driver's door area and found a loaded pistol in the driver's door armrest console. The detectives also recovered from Hunt the $225.00 in buy money that the CI used to purchase heroin from Hunt. The Lincoln was towed and inventoried by the detectives.

The government subsequently charged Hunt with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), possessing heroin with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), and using and carrying a firearm during and in relation to a drug

trafficking crime in violation of 18 U.S.C. § 924(c).

Defendant filed a motion for disclosure of the identity of the government's CI. Pursuant to an order of reference, the Magistrate Judge denied Defendant's motion. The Magistrate Judge began by observing that courts have never held that the Due Process Clause requires the disclosure of a CI's identity at a suppression hearing. Nor is the government required to disclose the identity of any of its witnesses prior to trial. The Magistrate Judge then discussed the government's qualified privilege to withhold the identity of informants. Applying the Supreme Court's test for disclosure in *Roviaro v. United States*, 353 U.S. 53 (1957), the Magistrate Judge concluded that the balance of the factors weighed against disclosure in the case at bar. The Magistrate Judge held that the CI here was acting as a tipster or introducer as opposed to an active participant in the events underlying Defendant's potential criminal liability. The CI passed information to the police and participated in the controlled purchase of heroin from Defendant. The CI, however, was not present for the investigative detention of Defendant, where the police seized the firearm and narcotics forming the basis of Defendant's charges. Even if Defendant could show that the CI was an active participant, Defendant had failed to show that CI's identity would be helpful to his defense. The Magistrate Judge emphasized that the CI's tip was corroborated through further investigation that led to Defendant's arrest. Finally, the Magistrate Judge found that the CI was now deceased, further weakening Defendant's need for the disclosure of the CI's identity. Therefore, the Magistrate Judge denied Defendant's motion.

In his Objections to the Magistrate Judge's Order, Defendant argues that the Magistrate Judge's conclusions were contrary to law. First, Defendant objects to the holding that disclosure

of an informant's identity is never required prior to trial.  Defendant cites several cases including *Roviaro* for the proposition that there is no bright line rule prohibiting disclosure prior to trial.  Defendant goes on to object to the Magistrate Judge's balancing of the facts in this case to conclude that disclosure was not warranted.  According to Defendant, the CI was an active participant in the controlled purchase "that provided the officers with probable cause to stop [] Defendant's vehicle."  Defendant contends that the facts in the instant case are analogous to the facts in *Roviaro*, where the Supreme Court ruled that the defendant in that case was entitled "to examine the man who had been nearest to him and took part in the transaction."  As for the CI's significance to the defense, Defendant asserts that the CI is "the only person who would be able to confirm or contradict the testimony of the officers."  Despite the CI's subsequent death, Defendant maintains that without information about the CI, he has no basis to challenge the officers' hearsay statements.  For these reasons, Defendant argues that the Magistrate Judge's Order was contrary to law.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b), a district court shall apply a "clearly erroneous or contrary to law" standard of review for "nondispositive" preliminary matters such as motions to compel.[5]  Fed. R. Civ. P. 72(a) states that a district judge "shall consider" objections to a magistrate judge's order on a nondispositive matter and "shall modify or set aside any portion of

---

[5] *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) (citing *United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)).  *See also* 28 U.S.C. § 636(b)(1)(A).

the magistrate judge's order found to be clearly erroneous or contrary to law."[6] "When examining legal conclusions under the 'contrary to law' standard, the Court may overturn 'any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent.'"[7]

## ANALYSIS

The Court finds that the Magistrate Judge's Order was not clearly erroneous or contrary to law.  Defendant's first assignment of error, the Magistrate Judge's holding that disclosure of an informant's identity is not required at a suppression hearing, is without merit.  The Magistrate Judge correctly cited the relevant law on this issue, including *United States v. Raddatz*, 447 U.S. 667 (1980).  The *Raddatz* Court stated that the Due Process Claus "has never been held to require the disclosure of an informant's identity at a suppression hearing."[8]  Defendant relies in part on *United States v. Harper*, 609 F.2d 1198 (6th Cir 1979), a case decided prior to *Raddatz*. According to Defendant, the Sixth Circuit in *Harper* held that the district court should have granted the defendant's request for disclosure of an informant's identity at the suppression hearing.  In *Harper*, the district court denied the defendant's motion to suppress and denied a renewed motion to suppress at trial.[9]  As a result, the defendant never had an opportunity to

---

[6] Fed. R. Civ. P. 72(a); *Bell v. Int'l Broth. of Teamsters*, No. 96-3219, 1997 WL 103320, at *4 (6th Cir. Mar. 6, 1997).

[7] *Doe v. Aramark Educational Resources, Inc.*, 206 F.R.D. 459, 461 (M.D. Tenn. 2002) (citing *Gandee v. Glaser,* 785 F. Supp. 684, 686 (S.D. Ohio 1992), *aff'd,* 19 F.3d 1432 (6th Cir. 1994)). *See also* 32 Am. Jur. 2d *Federal Courts* § 143 (2008) ("A magistrate judge's order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure").

[8] 447 U.S. at 679.

[9] *Harper*, 609 F.2d at 1199.

cross-examine the informant.[10]  The Court finds that *Harper* is not altogether inconsistent with *Raddatz* or the Magistrate Judge's ruling.  Defendant's interpretation to the contrary, the Sixth Circuit never actually specified that disclosure was required at the pre-trial hearing, only that the defendant should have had the opportunity to cross-examine the informant under *Roviaro*, presumably at trial.[11]  Defendant otherwise fails to reconcile *Harper* with the clear language of the Supreme Court in *Raddatz*.  The Court would note that despite this threshold ruling, the Magistrate Judge still went on to consider the merits of Defendant's request for disclosure.  It is clear then that this ruling was not the only basis for the Magistrate Judge's decision to deny Defendant's motion.  In any event, Defendant's first Objection is **OVERRULED**.

Second, Defendant contends that the Magistrate Judge erred in concluding that the CI in this case acted as a tipster or introducer.  Defendant argues that the CI was an active participant (a factor favoring disclosure) and that his role here is analogous to the CI's role in *Roviaro*.  Both cases involve an investigation into suspected drug trafficking and a CI's participation in a controlled purchase of narcotics.  Beyond that, the Court finds *Roviaro* distinguishable.  Unlike Albert Roviaro, Defendant was not charged on the controlled purchase with the CI.[12]  Rather Defendant was indicted on possessory crimes stemming from the vehicle stop.  The CI was not present when Defendant attempted to elude the police, when the police finally forced

---

[10] *Id*.

[11] *Id*.

[12] *Cf. Roviaro*, 353 U.S. at 62-63, 77 S.Ct. 623 ("The materiality of John Doe's possible testimony must be determined by reference to the offense charged in Count 2 and the evidence relating to that count. The charge is in the language of the statute.  It does not charge mere possession; it charges that petitioner did 'fraudulently and knowingly receive, conceal, buy and facilitate the transportation and concealment after importation of. . . heroin, knowing the same to be imported into the United States contrary to law. . . .'").

Defendant's vehicle to a stop, or when the police detained Defendant and recovered a firearm and narcotics from his vehicle. Under the circumstances, the Magistrate Judge's holding that the CI here was a tipster or introducer was not contrary to law. Therefore, Defendant's Objection on this point is **OVERRULED**.

Third, Defendant argues that he has met his burden to shown how the CI's testimony would assist his defense. The Court disagrees. Defendant has not shown how the CI's testimony would support defenses to the charges of being a felon in possession of a firearm, possessing heroin with intent to distribute, or using a firearm in furtherance of a drug trafficking crime. Defendant speculates without elaboration that the CI "would be able to confirm or contradict the testimony of the officers," an apparent reference to the testimony of the investigators about the CI's tips. The Magistrate Judge noted, however, that the police did not rely solely on the CI's information. Defendant further asserts that "the alleged undercover sale [] provided the legal basis in which to stop [] Defendant's vehicle." While the CI gave the police the initial tip and participated in the controlled purchase, the CI had no involvement in the traffic stop of Defendant's vehicle or the investigative detention that led to Defendant's arrest. As the Court has already pointed out, Defendant was not charged with any crime under federal law for engaging in the transaction with the CI. Under the facts of this case, Defendant has failed to meet his burden on this issue. Therefore, Defendant's Objection as to this holding is **OVERRULED**.

Finally, Defendant argues that the Magistrate Judge erred in finding that the CI's death weighs against disclosure. The Magistrate Judge properly concluded that the death of the CI does not lessen the government's interest in confidentiality. Defendant has cited no legal

9

authority to the contrary.  Defendant only argues that without disclosure he cannot challenge the officers' hearsay statements.  However, Defendant again fails to explain what information disclosure of the CI's identity would provide and more importantly how that information would assist his defense.  Therefore, Defendant's Objection is **OVERRULED**.

Having considered all of Defendant's Objections to the Magistrate Judge's Order, the Court finds them to be without merit.  Therefore, Defendant's Objections are **OVERRULED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 3, 2011.